CENTER FOR DISABILITY ACCESS
Ray Ballister, Jr., Esq., SBN 111282
Mark Potter, Esq., SBN 166317
Phyl Grace, Esq., SBN 171771
Dennis Price, SBN 279082
Mail: PO Box 262490
San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
phylg@potterhandy.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, <br><br> Plaintiff, <br><br> v. <br><br> **Glen Arms Estates, Inc.,** a California Corporation; **Usman Abbas Syed;** and Does 1-10, <br><br> Defendants. | **Case No**. <br><br> **Complaint For Damages And Injunctive Relief For** Violations Of: American's With Disabilities Act; Unruh Civil Rights Act. |

Plaintiff Scott Johnson complains of Glen Arms Estates, Inc.; Usman Abbas Syed; and Does 1-10 (herein after collectively referred to as "Defendants"), and alleges as follows:

**PARTIES:**

1. Plaintiff is a California resident with physical disabilities. Plaintiff is a level C-5 quadriplegic. He cannot walk and also has significant manual dexterity impairments. He uses a wheelchair for mobility and has a specially equipped van.

2. In March 2015, Defendant Glen Arms Estates, Inc. was the real

Complaint

property owner of the building/parcel located at or about 1 Boone Court, Danville, California, 94526.

3. In April 2015, Defendant Glen Arms Estates, Inc. was the real property owner of the building/parcel located at or about 1 Boone Court, Danville, California, 94526.

4. In May 2015, Defendant Glen Arms Estates, Inc. was the real property owner of the building/parcel located at or about 1 Boone Court, Danville, California, 94526.

5. In June 2015, Defendant Glen Arms Estates, Inc. was the real property owner of the building/parcel located at or about 1 Boone Court, Danville, California, 94526.

6. In October 2015, Defendant Glen Arms Estates, Inc. was the real property owner of the building/parcel located at or about 1 Boone Court, Danville, California, 94526

7. In November 2015, Defendant Glen Arms Estates, Inc. was the real property owner of the building/parcel located at or about 1 Boone Court, Danville, California, 94526.

8. In December 2015, Defendant Glen Arms Estates, Inc. was the real property owner of the building/parcel located at or about 1 Boone Court, Danville, California, 94526.

9. Currently, Defendant Glen Arms Estates, Inc. was the real property owner of the building/parcel located at or about 1 Boone Court, Danville, California, 94526.

10. In March 2015, Defendant Usman Abbas Syed was the business owner of the Arco located at or about 1 Boone Court, Danville, California, 94526 (hereinafter "Arco").

11. In April 2015, Defendant Usman Abbas Syed was the business owner of the Arco located at or about 1 Boone Court, Danville, California, 94526.

Complaint

12. In May 2015, Defendant Usman Abbas Syed was the business owner of the Arco located at or about 1 Boone Court, Danville, California, 94526.

13. In June 2015, Defendant Usman Abbas Syed was the business owner of the Arco located at or about 1 Boone Court, Danville, California, 94526.

14. In October 2015, Defendant Usman Abbas Syed was the business owner of the Arco located at or about 1 Boone Court, Danville, California, 94526.

15. In November 2015, Defendant Usman Abbas Syed was the business owner of the Arco located at or about 1 Boone Court, Danville, California, 94526.

16. In December 2015, Defendant Usman Abbas Syed was the business owner of the Arco located at or about 1 Boone Court, Danville, California, 94526.

17. Currently, Defendant Usman Abbas Syed is the business owner of the Arco located at or about 1 Boone Court, Danville, California, 94526.

18. Plaintiff does not know the true names of Defendants, their business capacities, their ownership connection to the property and business, or their relative responsibilities in causing the access violations herein complained of, and alleges a joint venture and common enterprise by all such Defendants. Plaintiff is informed and believes that each of the Defendants herein, including Does 1 through 10, inclusive, is responsible in some capacity for the events herein alleged, or is a necessary party for obtaining appropriate relief. Plaintiff will seek leave to amend when the true names, capacities, connections, and responsibilities of the Defendants and Does 1 through 10, inclusive, are ascertained.

**JURISDICTION & VENUE:**

19. This Court has subject matter jurisdiction over this action pursuant to

28 U.S.C. § 1331 and § 1343(a)(3) & (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq.

20. Pursuant to supplemental jurisdiction, an attendant and related cause of action, arising from the same nucleus of operative facts and arising out of the same transactions, is also brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act.

21. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS:**

22. Arco is a facility open to the public, a place of public accommodation, and a business establishment.

23. Parking is one of the facilities, privileges and advantages offered by Defendants to patrons of Arco.

24. In March 2015, there was one standard disabled parking space at Arco marked and reserved for persons with disabilities.

25. However, in March 2015, Defendants failed to maintain the standard disabled parking space in compliance with the Americans with Disabilities Act Accessibility Guidelines (ADAAG).

26. In March 2015, the standard disabled parking space did not have required wheelchair logo signage.

27. In March 2015, the standard disabled parking space did not have the required "Minimum Fine $250" signage.

28. In March 2015, the standard disabled parking space did not have the required tow-away signage.

29. In March 2015, there was not an accessible path of travel from the standard disabled parking space to the entrance.

Complaint

30. In March 2015, there was not a single van accessible space marked and reserved for persons with disabilities.

31. In April 2015, there was one standard disabled parking space at Arco marked and reserved for persons with disabilities.

32. In April 2015, Defendants failed to maintain the standard disabled parking space in compliance with the ADAAG.

33. In April 2015, the standard disabled parking space did not have required wheelchair logo signage.

34. In April 2015, the standard disabled parking space did not have the required "Minimum Fine $250" signage.

35. In April 2015, the standard disabled parking space did not have the required tow-away signage.

36. In April 2015, there was not an accessible path of travel from the standard disabled parking space to the entrance.

37. In April 2015, there was not a single van accessible space marked and reserved for persons with disabilities.

38. In May 2015, there was one standard disabled parking space at Arco marked and reserved for persons with disabilities.

39. In May 2015, Defendants failed to maintain the standard disabled parking space in compliance with the ADAAG.

40. In May 2015, the standard disabled parking space did not have required wheelchair logo signage.

41. In May 2015, the standard disabled parking space did not have the required "Minimum Fine $250" signage.

42. In May 2015, the standard disabled parking space did not have the required tow-away signage.

43. In May 2015, there was not an accessible path of travel from the standard disabled parking space to the entrance.

Complaint

44. In May 2015, there was not a single van accessible space marked and reserved for persons with disabilities.

45. In June 2015, there was one standard disabled parking space at Arco marked and reserved for persons with disabilities.

46. In June 2015, Defendants failed to maintain the standard disabled parking space in compliance with the ADAAG.

47. In June 2015, the standard disabled parking space did not have required wheelchair logo signage.

48. In June 2015, the standard disabled parking space did not have the required "Minimum Fine $250" signage.

49. In June 2015, the standard disabled parking space did not have the required tow-away signage.

50. In June 2015, there was not an accessible path of travel from the standard disabled parking space to the entrance.

51. In June 2015, there was not a single van accessible space marked and reserved for persons with disabilities.

52. In October 2015, there was one standard disabled parking space at Arco marked and reserved for persons with disabilities.

53. In October 2015, Defendants failed to maintain the standard disabled parking space in compliance with the ADAAG.

54. In October 2015, the standard disabled parking space did not have required wheelchair logo signage.

55. In October 2015, the standard disabled parking space did not have the required "Minimum Fine $250" signage.

56. In October 2015, the standard disabled parking space did not have the required tow-away signage.

57. In October 2015, there was not an accessible path of travel from the standard disabled parking space to the entrance.

Complaint

58. In October 2015, there was not a single van accessible space marked and reserved for persons with disabilities.

59. In November 2015, there was one standard disabled parking space at Arco marked and reserved for persons with disabilities.

60. In November 2015, Defendants failed to maintain the standard disabled parking space in compliance with the ADAAG.

61. In November 2015, the standard disabled parking space did not have required wheelchair logo signage.

62. In November 2015, the standard disabled parking space did not have the required "Minimum Fine $250" signage.

63. In November 2015, the standard disabled parking space did not have the required tow-away signage.

64. In November 2015, there was not an accessible path of travel from the standard disabled parking space to the entrance.

65. In November 2015, there was not a single van accessible space marked and reserved for persons with disabilities.

66. In December 2015, there was one standard disabled parking space at Arco marked and reserved for persons with disabilities.

67. In December 2015, Defendants failed to maintain the standard disabled parking space in compliance with the ADAAG.

68. In December 2015, the standard disabled parking space did not have required wheelchair logo signage.

69. In December 2015, the standard disabled parking space did not have the required "Minimum Fine $250" signage.

70. In December 2015, the standard disabled parking space did not have the required tow-away signage.

71. In December 2015, there was not an accessible path of travel from the standard disabled parking space to the entrance.

Complaint

72. In December 2015, there was not a single van accessible space marked and reserved for persons with disabilities.

73. Currently, there is one standard disabled parking space at Arco marked and reserved for persons with disabilities.

74. Currently, Defendants have failed to maintain the standard disabled parking space in compliance with the ADAAG.

75. Currently, the standard disabled parking space does not have required wheelchair logo signage.

76. Currently, the standard disabled parking space does not have the required "Minimum Fine $250" signage.

77. Currently, the standard disabled parking space does not have the required tow-away signage.

78. Currently, there is not an accessible path of travel from the standard disabled parking space to the entrance.

79. Currently, there is not a single van accessible space marked and reserved for persons with disabilities.

80. Restrooms are another one of the facilities, privileges and advantages offered by Defendants to patrons of Arco.

81. In March 2015, the door hardware at the entrance to the restroom at Arco was a traditional knob style that required tight grasping or twisting of the wrist to operate.

82. In March 2015, the unisex restroom at Arco did not have the International Symbol of Accessibility signage adjacent to the door.

83. In April 2015, the door hardware at the entrance to the restroom at Arco was a traditional knob style that required tight grasping or twisting of the wrist to operate.

84. In April 2015, the unisex restroom at Arco did not have the International Symbol of Accessibility signage adjacent to the door.

Complaint

85. In May 2015, the door hardware at the entrance to the restroom at Arco was a traditional knob style that required tight grasping or twisting of the wrist to operate.

86. In May 2015, the unisex restroom at Arco did not have the International Symbol of Accessibility signage adjacent to the door.

87. In June 2015, the door hardware at the entrance to the restroom at Arco was a traditional knob style that required tight grasping or twisting of the wrist to operate.

88. In June 2015, the unisex restroom at Arco did not have the International Symbol of Accessibility signage adjacent to the door.

89. In October 2015, the door hardware at the entrance to the restroom at Arco was a traditional knob style that required tight grasping or twisting of the wrist to operate.

90. In October 2015, the unisex restroom at Arco did not have the International Symbol of Accessibility signage adjacent to the door.

91. In November 2015, the door hardware at the entrance to the restroom at Arco was a traditional knob style that required tight grasping or twisting of the wrist to operate.

92. In November 2015, the unisex restroom at Arco did not have the International Symbol of Accessibility signage adjacent to the door.

93. In December 2015, the door hardware at the entrance to the restroom at Arco was a traditional knob style that required tight grasping or twisting of the wrist to operate.

94. In December 2015, the unisex restroom at Arco did not have the International Symbol of Accessibility signage adjacent to the door.

95. Currently, the door hardware at the entrance to the restroom at Arco is a traditional knob style that requires tight grasping or twisting of the wrist to operate.

Complaint

96. Currently, the unisex restroom at Arco does not have the International Symbol of Accessibility signage adjacent to the door.

97. Plaintiff visited Arco in March 2015.

98. Plaintiff visited Arco in April 2015.

99. Plaintiff visited Arco in May 2015.

100. Plaintiff visited Arco in June 2015.

101. Plaintiff visited Arco in October 2015.

102. Plaintiff visited Arco in November 2015.

103. Plaintiff visited Arco in December 2015.

104. The plaintiff personally encountered these violations and they denied him full and equal access.

105. These barriers caused Plaintiff great difficulty and frustration.

106. Although Plaintiff did not enter the restroom at Arco and personally confront the barriers within, Plaintiff alleges that the restroom is not accessible to persons with disabilities.

107. The restroom mirror is mounted on the wall so that its bottom edge is more than 40 inches above the floor and is not effectively used by wheelchair users.

108. There is no clear floor space in front of the disposable toilet seat cover dispenser because it is mounted on the wall behind the toilet.

109. Plaintiff would like to return and patronize Arco but will be deterred from visiting until the defendants cure the violations.

110. The violations identified above are easily removed without much difficulty or expense. They are the types of barriers identified by the Department of Justice as presumably readily achievable to remove and, in fact, these barriers are readily achievable to remove. Moreover, there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable.

Complaint

111. Additionally, on information and belief, the plaintiff alleges that the failure to remove these barriers was intentional because: (1) these particular barriers are intuitive and obvious; (2) the defendants exercised control and dominion over the conditions at this location and, therefore, the lack of accessible facilities was not an "accident" because, had the defendants intended any other configuration, they had the means and ability to make the change.

112. Given the obvious and blatant violation, the plaintiff alleges, on information and belief, that there are other violations and barriers on the site that relate to his disability. Plaintiff will amend the Complaint to provide proper notice regarding the scope of this lawsuit once he conducts a site inspection. However, please be on notice that the plaintiff seeks to have all barriers related to his disability remedied. See *Doran v. 7-11*, 506 F.3d 1191 (9th Cir. 2008) (holding that once a plaintiff encounters one barrier at a site, he can sue to have all barriers that relate to his disability removed regardless of whether he personally encountered them).

113. Plaintiff is and has been deterred from returning and patronizing Arco because of his knowledge of the illegal barriers that exist. Plaintiff will, nonetheless, return to Arco to assess ongoing compliance with the ADA and will return to patronize Arco as a customer once the barriers are removed.

**I. FIRST CAUSE OF ACTION: VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990** (On behalf of Plaintiff and against all Defendants.) (42 U.S.C. section 12101, et seq.)

114. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

115. Under the ADA, it is an act of discrimination to fail to ensure that

Complaint

the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a). Discrimination is defined, inter alia, as follows:

   a. A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. § 12182(b)(2)(A)(ii).
   b. A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv). Barriers are defined by reference to the ADAAG, found at 28 C.F.R., Part 36, Appendix "D."
   c. A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

116.   Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. To qualify as a reserved handicap parking space, the space must be properly marked and designated. Under the ADA, the method, color of marking, and

length of the parking space are to be addressed by state or local laws or regulations. See 36 C.F.R., Part 1191, § 502.3.3. Under the California Building Code, to properly and effectively reserve a parking space for persons with disabilities, each such space must be identified with a reflectorized sign permanently posted adjacent to and visible from each stall or space. CBC § 1129B.4. The sign must consist of the International Symbol of Accessibility (♿) in white on a blue background. *Id.* It cannot be smaller than 70 square inches and must be mounted so that there is a minimum of 80 inches from the bottom of the sign to the parking space. *Id.* Signs must be posted so that they cannot be obscured by a vehicle parking in the space. *Id.* An additional sign or additional language below the symbol of accessibility must state, "Minimum Fine $250" to ensure that the space remains available for persons with disabilities. *Id.* Another sign must be posted in a conspicuous place at the entrance to the parking lot or immediately adjacent to each handicap parking space, with lettering 1 inch in height, that clearly and conspicuously warn that unauthorized vehicles parking in the handicap parking spaces can be towed at the owner's expense. *Id.* Additionally, the surface of the handicap parking stall must have a profile view of a wheelchair occupant (♿) that is 36 inches by 36 inches. *Id.* And the surface of the access aisle must have a blue border. CBC § 1129B.3. The words "NO PARKING" in letters at least a foot high must be painted on the access aisle. *Id.*

117.   Here, the failure to post the required wheelchair logo/International Symbol of Accessibility signage is a violation of the ADA.

118.   Here, the failure to post the required fine signage is a violation of the ADA.

119.   Here, the failure to post the required tow-away signage is a violation of the ADA.

120.   Here, the failure to mark the access aisle with the required "NO

Complaint

PARKING" lettering is a violation of the ADA.

121. Here, the parking simply failed to comply.

122. Under the ADA, there must be an accessible route within the boundary of the site from the accessible parking to the accessible building entrance they serve. 1991 Standards § 4.3.2(1); 2010 Standards § 206.2.The accessible route shall, to the maximum extent feasible, coincide with the route for the general public. *Id.* The accessible route must be at least 36 inches in width except at doors. 1991 Standards § 4.3.3; 2010 Standards § 403.5.1.

123. Here, the failure to provide an accessible path of travel from the rear handicap parking space to the entrance is a violation of the ADA.

124. Any business that provides parking spaces must provide accessible parking spaces. 1991 Standards § 4.1.2(5); 2010 Standards § 208. One in every eight of those accessible parking spaces but not less than one must be a "van" accessible parking space, *i.e.*, having an eight foot access aisle. 1991 Standards § 4.1.2(5)(b). Under the 2010 Standards, one in every six accessible parking spaces must be van accessible. 2010 Standards § 208.2.4.

125. Here, the lack of a van parking space is a violation of the ADA.

126. Restroom door hardware must have handles and other operating devices that have a shape that is easy to use with one hand and does not require tight grasping, tight pinching, or twisting of the wrist to operate. 1991 Standards § 4.23.2; 4.13.9; 2010 Standards § 404.2.7; 309.4.

127. Here, the failure to provide accessible restroom door hardware is a violation of the ADA.

128. Where toilet rooms are provided, each toilet room shall comply with 2010 Standards § 603. 2010. 2010 Standards § 213.2.

129. Here, there was no accessible restroom in violation of the ADA.

130. Where existing toilet rooms or bathing rooms do not comply with 2010 Standards § 603, the toilet rooms or bathing rooms complying with

Complaint

2010 Standards § 603 shall be identified by the International Symbol of Accessibility complying with 703.7.2.1.

131.  Here, there was no International Symbol of Accessibility in violation of the ADA.

132.  Where existing toilet rooms or bathing rooms do not comply with 2010 Standards § 603, directional signs indicating the location of the nearest toilet room or bathing room complying with 2010 Standards § 603 within the facility shall be provided. Signs shall comply with 2010 Standards § 703.5 and shall include the International Symbol of Accessibility complying with 2010 Standards § 703.7.2.1.

133.  Here, there was no directional signage indicating the route to the nearest compliant restroom, in violation of the ADA.

134.  Additionally, per the California building Code, all accessible restrooms must be marked as such with compliant signage posted adjacent to the door. CBC § 1117B.5.1.3.

135.  Mirrors shall be mounted with the bottom edge of the reflecting surface no higher than 40 inches above the finish floor. 1991 Standards § 4.19.6; 2010 Standards § 603.3.

136.  Here, the mirror was mounted higher than the maximum permitted and is a violation of the ADA.

137.  Clear floor space that allows a forward or a parallel approach by a person using a wheelchair shall be provided at controls, dispensers, receptacles, and other operable equipment. 1991 Standards § 4.27.2; 2010 Standards § 309.2.

138.  Here, the failure to provide such floor space with which to access the disposable toilet seat covers is a violation of the ADA.

139.  A public accommodation must maintain in operable working condition those features of its facilities and equipment that are required to be

readily accessible to and usable by persons with disabilities. 28 C.F.R. § 36.211(a).

140. Here, the failure to ensure that the accessible facilities were available and ready to be used by the plaintiff is a violation of the ADA.

141. Given its location and options, Arco is a location that the plaintiff will continue to desire to patronize but he has been and will continue to be discriminated against due to the lack of accessible facilities.

**II. SECOND CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT** (On behalf of Plaintiff and against all Defendants.) (Cal. Civ. Code § 51-53.)

142. Plaintiff re-pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in all prior paragraphs of this complaint.

143. Because the defendants violated the plaintiff's rights under the ADA, they also violated the Unruh Civil Rights Act and are liable for damages. (Cal. Civ. Code § 51(f), 52(a).)

144. Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort, or embarrassment for the plaintiff, the defendants are also each responsible for statutory damages, *i.e.,* a civil penalty. (Cal. Civ. Code § 55.56(a)-(c).)

145. Although the plaintiff was markedly frustrated by facing discriminatory barriers and this frustration possibly qualifies as an emotional distress injury, even manifesting itself with minor and fleeting physical symptoms, the plaintiff does not value this very modest frustration and physical personal injury greater than the amount of the statutory damages.

**PRAYER**:

Complaint

Wherefore, Plaintiff prays that this Court award damages and provide relief as follows:

1. For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act. Note: the plaintiff is not invoking section 55 of the California Civil Code and is not seeking injunctive relief under the Disabled Persons Act at all.

2. Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000.

3. Reasonable attorney fees, litigation expenses and costs of suit, pursuant to 42 U.S.C. § 12205; and Cal. Civ. Code §§ 52.

Dated: January 27, 2016                    CENTER FOR DISABILITY ACCESS

By: _____
Mark Potter, Esq.
Attorneys for Plaintiff

Complaint